UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **WENDY IRENE RODENBERG,** | ) |
| **Plaintiff,** | ) |
| v. | ) Case No. 7:21cv583 |
| **VIRGINIA TECHNIQUES GYMNASTICS, INC.,** | ) |
| Serve:<br>**Cheryl A. Johnson, Registered Agent**<br>**1550 Roanoke St., Suite C**<br>**Christiansburg, VA 24073** | ) **JURY TRIAL DEMANDED** |
| **Defendant.** | ) |

## COMPLAINT

Plaintiff Wendy Rodenberg (hereafter "Rodenberg" or "Plaintiff"), comes before the court, by counsel, and states as her Complaint against Virginia Techniques Gymnastics, Inc. (hereafter "Virginia Techniques" or "Defendant"), the following:

### JURISDICTION AND VENUE

(1)     This is an action to address deprivation of rights secured by the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADAAA"), *see generally*.

(2)     The Court has jurisdiction over this action pursuant to 42 U.S.C. §2000e-5(f) and 28 U.S.C. §1343(a)(4).

(3)     The claims asserted in this action arose within the Western District of Virginia and the alleged discrimination and damage occurred in the Western District of Virginia. Venue of this action is, thus, proper pursuant to 42 U.S.C. §2000e, *et seq*.

(4) Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission on April 7, 2020, and an amended charge on July 17, 2020; received a notice of right to sue dated August 16, 2021 (Exhibit A); and commenced this action within 90 days of receipt thereof.

(5) Defendant Virginia Techniques is a Virginia Stock Corporation operating a gymnastics training facility in Christiansburg in Montgomery County, Virginia.

(6) At all times material hereto, Virginia Techniques is and was a "person" engaged in an industry affecting commerce which had 15 (fifteen) or more employees for each working day in each of 20 (twenty) or more calendar weeks during the years of Plaintiff's employment or the preceding calendar year.

(7) Plaintiff, at all times material hereto, is and was a resident of the Commonwealth of Virginia and was an employee or former employee of Virginia Techniques.

## STATEMENT OF FACTS

(8) Virginia Techniques hired Rodenberg as a Team Coach on or about June 5, 2017.

(9) On August 13, 2018, Virginia Techniques offered and Rodenberg accepted an updated offer of employment for a 30 hour/week, "fulltime," non-salaried position as the Ninja Zone Coordinator and Team Coach.

(10) At the time of her discharge, Rodenberg was working under the 2018 employment offer as a professional Junior Olympics level coach with USA Gymnastics at Virginia Techniques.

(11) Rodenberg worked on a consistent basis for Virginia Techniques for more than two (2) years, until her unlawful termination and/or constructive discharge on or about November 20, 2019.

(12)    During Rodenberg's employment with Virginia Techniques, her work performance met or exceeded Virginia Techniques' legitimate expectations, and she was never disciplined. Rather, she received one performance evaluation in 2018, and was given a raise as a result.

(13)    Cheryl Risk Johnson ("Johnson") is an owner of Virginia Techniques. She also serves as the Head Coach and was Rodenberg's supervisor during her employment with Virginia Techniques.

(14)    Prior to April 2019, Johnson met with Rodenberg and advised her that when the new gymnastics season began in June, Rodenberg would move up to coach upper levels of Xcel (Xcel is a USA gymnastics track that is an alternative to the Junior Olympic track), continue coaching level 4/5 beam and floor and level 6 beam, and continue as the Ninja Zone coordinator. This new position was full time, which was a minimum of 30 hours, and constituted an increase in responsibility.

(15)    In April of 2019, Rodenberg collapsed at work due to bone spurs in her cervical spine.

(16)    The bone spur condition caused Rodenberg to suffer the following symptoms: skin mottling, neck pain, impingement of the vertebral artery, and pre-syncope.

(17)    The severity of the condition required Rodenberg to take leave without pay from Virginia Techniques to seek treatment for her condition. At first, she was hospitalized. Following the hospitalization and an MRI, she received monthly spine injections beginning in May of 2019 in order to be upright. During this time, Rodenberg was largely incapable of working. She received assistance from family members to carry out regular activities of daily living and wore a stroke alert bracelet because of the impingement on the artery. Rodenberg ultimately underwent cervical spine surgery in August 2019, to remediate the condition.

(18)    After recuperating sufficiently from her cervical spine surgery, Rodenberg returned to work on September 24, 2019, with a temporary restriction that she could not lift over her head. This restriction did not require any accommodation in the workplace.

(19)    When Rodenberg returned to work in September 2019, Johnson reduced Rodenberg to a part-time coaching position of about 10 hours per week, with fewer responsibilities, despite Rodenberg being ready and willing to return to the full-time responsibilities she had previously fulfilled or was supposed to assume in June 2019 when the new gymnastics season had begun.

(20)    Upon return, Rodenberg adequately performed the essential functions of her job as a gymnastics coach without accommodation. Rodenberg worked her scheduled shifts without assistance. She did not ask for adjustments to her schedule or require time off for medical follows ups.

(21)    On October 15, 2019, while working, Rodenberg was accidentally hit in the back of the head with a gym mat and suffered a concussion and mild whiplash.

(22)    Johnson was present when Rodenberg was injured. Rodenberg reported the injury to Johnson that night. Johnson stated: "Wendy, this is exactly what worries me about having you back in here."

(23)    This statement indicates that Johnson regarded Rodenberg as an individual with a disability and/or as impaired.

(24)    Rodenberg missed no work as a result of being hit with the gym mat but reported as usual for her next two scheduled shifts on October 17, 2019, and October 19, 2019. In fact, Rodenberg feared that if she missed work, Johnson would terminate her employment. Rodenberg confided this concern to another employee with supervisory responsibility, and the supervisor

confirmed that it was certainly "a risk." The same supervisor also communicated to Rodenberg that Johnson could make life "difficult" for Rodenberg in other ways too.

(25) Because Rodenberg continued to experience pain and other symptoms, she did seek medical attention at the emergency room for the concussion and mild whiplash on October 21, 2019.

(26) Due to the close temporal proximity between Rodenberg's major spine surgery and her injury at work, and Johnson's reaction thereto, Rodenberg began to experience anxiety including panic attacks. Rodenberg had not suffered from notable anxiety or panic attacks previously and was caught off guard by the symptoms she was experiencing.

(27) She sought help from a counselor and was diagnosed with Post Traumatic Stress Disorder ("PTSD") due to complex medical trauma.

(28) PTSD is a mental impairment that substantially limits brain function.

(29) Rodenberg's PTSD substantially limited her brain function in that it caused her to suffer panic attacks which she had never previously experienced and anxiety, requiring medication and therapy.

(30) Rodenberg began treatment for PTSD including weekly trauma therapy on October 30, 2019.

(31) Because she continued to experience panic attacks, she was prescribed medication on November 4, 2019.

(32) On or around that same day, Rodenberg informed Johnson of her condition and treatment by electronic communication.

(33)    The following day, Rodenberg spoke with Johnson in person and assured her that the PTSD would not affect her job performance, and that Rodenberg was actively seeking treatment through medication and trauma therapy counseling.

(34)    Johnson responded that Rodenberg's news "caught [her] off guard" and that she "was worried about this." Johnson also told Rodenberg to "keep this 'PTSD stuff' to [herself]," adding that Rodenberg should resist the impulse to "post all about [her] life on Facebook."

(35)    During treatment for the injuries suffered on October 15, 2019, and for the resultant PTSD, Rodenberg did not miss work, and her job performance remained strong.

(36)    Johnson and a few of Rodenberg's coworkers knew that she was on medication for PTSD, and that she had suffered some allergic reactions to the various medications prescribed, which complicated the treatment of her PTSD.

(37)    Rodenberg requested one accommodation on November 5, 2019. By email, she asked that another coach accompany her to an upcoming gymnastic meet as it would take a few weeks for the main medication she had been prescribed to take full effect. Johnson immediately denied the request for accommodation. Johnson stated that she would not pay for two coaches to attend and stated that they had plenty of other coaches if Rodenberg was having difficulties. Fearing she would be terminated and replaced if she continued to ask for the accommodation, Rodenberg attended the meet on her own, and adequately performed the essential functions of her job.

(38)    On November 12, 2019, Johnson commended Rodenberg for her gymnasts' performance on the balance beam in their first competition two days earlier.

(39)    Rodenberg continued to treat her PTSD and adequately perform the essential functions of her coaching job without accommodation.

(40)     Nevertheless, and without warning, on November 20, 2019, Johnson told Rodenberg that "based on a conversation [Johnson] had with one of [Rodenberg's] coworkers, it was no longer safe for [Rodenberg] to be out on the floor coaching." Johnson told Rodenberg that Rodenberg would be taking a "leave of absence for the rest of the season at least." Rodenberg asked Johnson what she would need to see in order to "feel confident that [Rodenberg] was ready to return" and Johnson replied, "I don't know."

(41)     Rodenberg asked Johnson if she should begin looking for other jobs or if she could count on returning to Virginia Techniques. Johnson said, "I don't know. Maybe both."

(42)     Johnson had no legitimate basis for forcing Rodenberg out on an unpaid leave. Rodenberg was performing the essential functions of her job adequately, without accommodation.

(43)     Johnson told Rodenberg to draft an email for the parents of her gymnasts stating that Rodenberg realized that she had come back to work too quickly after her surgery and had now decided to take a leave of absence to continue her recovery.

(44)     Johnson told Rodenberg to state untruthfully that the leave of absence was voluntary, and that Rodenberg believed that stepping away "is best for everyone involved."

(45)     Rodenberg refused to lie to the parents of her team members and did not send the email as directed.

(46)     By email of November 24, 2019, Rodenberg told Johnson that she was fully capable of working, that she regarded the leave of absence as "forced" and not "best for everyone involved, especially the girls I coach." Rodenberg offered to Johnson to provide work releases from her medical providers to prove that she was capable of a full return to work without accommodation. Rodenberg noted that she planned to return to her "regular coaching schedule . . . no later than January 7, 2020."

(47) Johnson did not respond to the offer of medical releases nor to Rodenberg's suggested date of return to work, but instead, on November 26, 2019, Johnson sent an email to the parents updating the coaching assignments and removing Rodenberg from the coaching staff without explanation.

(48) The reassignment of coaching responsibilities without mentioning Rodenberg indicates that Virginia Techniques terminated Rodenberg's employment contemporaneous with forcing her to take an unpaid "leave of absence" on November 20, 2019.

(49) Johnson had no further communications with Rodenberg, and she discouraged Rodenberg's former coworkers from speaking with her.

(50) At least one parent contacted Rodenberg and let her know that she had heard at the gym that Rodenberg had been dismissed for abusing prescription drugs.

(51) This was untrue. Rodenberg took medication only as prescribed and was not advised by any medical practitioner that she could not perform the essential functions of her job while taking the medication as prescribed.

(52) In January 2020, Rodenberg, through counsel, notified Johnson of her complaints of disability discrimination.

(53) After filing her EEOC charge in April 2020, Rodenberg interviewed for a coaching position with another gym. The interview went well, and Rodenberg received the impression during the interview and from other contacts in the gymnastics community that she would be hired. However, she was contacted later and advised that the employer "decided to go in a different direction."

(54) The potential employer contacted Johnson. At a minimum, Johnson advised the potential employer that Rodenberg was not eligible for rehire and stated she could not comment further due to an ongoing legal dispute.

(55) Rodenberg's colleagues in the local gymnastics community thereafter communicated to Rodenberg that they believed that Johnson had influenced the potential employer to not hire Rodenberg. Johnson, when contacted by the potential employer, shared her perception that Rodenberg is impaired and unfit to coach gymnastics.

(56) At all times relevant to this Complaint, Rodenberg is a qualified individual with a disability: she suffers from PTSD and a disabling cervical spine bone spur condition that required treatment and surgical intervention. Alternatively, Virginia Techniques regarded Rodenberg as disabled.

(57) Johnson's acts and omissions were taken within the scope of her employment and role as the owner and operator of Virginia Techniques. Through the doctrine of *respondeat superior* and agency principles, Virginia Techniques is responsible for Johnson's acts and omissions.

### COUNT I: Discrimination in Violation of the ADA

(58) Plaintiff incorporates the above paragraphs as if restated here.

(59) Virginia Techniques discriminated against Rodenberg by reducing her to part-time status with fewer responsibilities and by terminating her employment and/or constructively discharging her because of Rodenberg's status as an individual with a disability or Virginia Techniques' regard or perception of Rodenberg as impaired.

(60)     The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

(61)     At all times relevant to this Complaint, Rodenberg was a qualified individual with a disability pursuant to the ADA. Rodenberg possessed the training, skills, and knowledge to perform the duties of a gymnastics coach. Prior to Virginia Techniques forcing Rodenberg out on an unpaid leave and terminating her employment, Rodenberg adequately performed the duties of a gymnastics coach and met or exceeded Virginia Techniques' legitimate expectations. Rodenberg did suffer from a debilitating cervical spine bone spur condition that had to be surgically corrected and caused her to miss several months of work from April 2019 to September 2019. This condition substantially impacted Rodenberg in the major life activity of working for several months, until it was treated surgically. Rodenberg also developed PTSD which limited her major life activity of brain function in that it caused her to have anxiety and panic attacks.

(62)     Alternatively, Rodenberg qualifies as an individual with a disability under the ADA, because Virginia Techniques regarded Rodenberg as being impaired. 42 U.S.C. § 12102(3)(A).

(63)     An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to [discrimination or retaliation] because of an actual or *perceived physical or mental impairment*, whether or not the impairment limits or is perceived to limit a major life activity. 42 U.S.C. § 12102(3)(A).

(64)     Rodenberg suffered from a severe cervical spine bone spur condition in 2019 for which she was required to take leave, seek treatment, and undergo surgery.

(65) When Rodenberg returned to work in September of 2019, Rodenberg could perform the essential functions of her job as a gymnastics coach without accommodation. Nevertheless, Virginia Techniques regarded Rodenberg as fragile, prone to injury, and a potential liability to Virginia Techniques. Virginia Techniques held this viewpoint despite knowing that Rodenberg had been permitted to return to work.

(66) As a result of this discriminatory animus, Virginia Techniques accepted Rodenberg back to work, but reduced her to part time status and reduced her responsibilities, which constituted an adverse employment action.

(67) Virginia Techniques reduced Rodenberg's hours from at least 30 per week to approximately 10 per week, reducing her weekly income by two-thirds.

(68) Virginia Techniques was aware of Rodenberg's bone spur condition and treatment as Rodenberg contemporaneously advised Virginia Techniques of the condition, her treatment, and her recovery. Virginia Techniques was aware of Rodenberg's PTSD because Rodenberg advised Virginia Techniques of the condition on or around November 5, 2019.

(69) Rodenberg's status as an individual with a disability or Virginia Techniques' regard of Rodenberg as an impaired individual caused Virginia Techniques to reduce Rodenberg's hours to part-time status upon her return to work in September 2019.

(70) In October 2019, Rodenberg was injured at work and sustained a concussion and whiplash. She sought medical treatment for these injuries. Virginia Techniques was aware of the injury because Johnson was present in the workplace when it occurred and Rodenberg reported it to her.

(71) Following the injury in October 2019, Rodenberg developed PTSD, for which she sought treatment through medication and counseling.

(72)     Following the October injury and the development of PTSD, Rodenberg could and did perform the essential functions of her job as a gymnastics coach without accommodation.

(73)     However, shortly after Rodenberg advised Virginia Techniques of her PTSD, Virginia Techniques forced Rodenberg out on an indefinite unpaid leave with no expectation that she could return, thusly terminating her employment. Without justification, Virginia Techniques cited as reasoning that Rodenberg was a "safety" concern and noted that the leave was required because Rodenberg had come back too soon from her surgery and needed more time to recover.

(74)     After forcing her out on leave, Virginia Techniques had no further communication with Rodenberg regarding employment, removed Rodenberg from the coaching list, and did not respond to Rodenberg's overture regarding a potential return.

(75)     Rodenberg's status as an individual with a disability or Virginia Techniques' regard of Rodenberg as an impaired individual caused Virginia Techniques to force Rodenberg out on an unpaid, indefinite leave without an expected return, which constituted a termination of employment, and an adverse employment action.

(76)     Virginia Techniques discriminatory actions against Rodenberg were intentional.

(77)     As a direct and proximate result of Defendant's actions, Rodenberg has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

(78)     At all times material hereto, Defendant engaged in discriminatory practices with malice or reckless indifference to Rodenberg's federally protected rights to support an award of punitive damages.

(79)  As a result of Virginia Techniques' discrimination against her in violation of the ADA, Rodenberg is entitled to compensatory and punitive damages, front pay, back pay, attorneys fees and costs.

### COUNT II: Retaliation in violation of the ADA

(80)  Plaintiff incorporates the above paragraphs as if restated here.

(81)  At all times relevant to this Complaint, Rodenberg was a qualified individual with a disability pursuant to the ADA. Rodenberg did suffer from a debilitating cervical spine bone spur condition that had to be surgically corrected and caused her to miss several months of work from April 2019 to September 2019. This condition substantially impacted Rodenberg in the major life activity of working for several months, until it was treated surgically. Rodenberg also developed PTSD which limited her major life activity of brain function in that it caused her to have anxiety and panic attacks. Rodenberg possessed the training, skills, and knowledge to perform the duties of a gymnastics coach. Prior to Virginia Techniques forcing Rodenberg out on an unpaid leave and terminating her employment, Rodenberg adequately performed the duties of a gymnastics coach and met or exceeded Virginia Techniques' legitimate expectations.

(82)  Alternatively, Rodenberg qualifies as an individual with a disability under the ADA, because Virginia Techniques regarded Rodenberg as being impaired. 42 U.S.C. § 12102(3)(A).

(83)  Prior to the termination of her employment and/or constructive discharge, Rodenberg adequately performed the essential functions of her job as a gymnastics coach.

(84)  On November 5, 2019, Rodenberg requested an accommodation for her PTSD: she asked that another coach be assigned to attend one gymnastics meet with her as one of the medications she had been prescribed would not be fully effective for approximately three weeks.

Defendant denied the request. Rodenberg attended the meet and adequately performed the essential functions of her job as gymnastics coach. This request for an accommodation constituted a protected activity.

(85) Fifteen days after the request, Defendant forced Rodenberg out on an unpaid leave, thus terminating her employment and/or constructively discharging her. In so doing, Defendant exhibited disability-related retaliatory animus: Defendant noted to Rodenberg that she was "unsafe," came back from her surgery "too soon," and should have taken more time to "recuperate." Defendant's act of forcing Rodenberg out on an unpaid leave thusly terminating her employment or constructively discharging her, constituted an adverse act.

(86) Defendant's adverse act is causally-related to Rodenberg's protected activity. The act was close in time to the protected act, only 15 days apart from it. Moreover, Defendant made statements in the course of committing the adverse act that referenced Plaintiff's status as an individual with a disability requiring accommodations or Defendant's regard of Plaintiff as impaired and needing accommodations.

(87) Defendant had no legitimate, non-retaliatory reason for the adverse act. At the time of the adverse act, Rodenberg was performing the essential functions of her job as a gymnastics coach without accommodation.

(88) The above-described acts by Virginia Techniques constitute retaliation in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. § 12101 *et seq.*, and ADA Amendments Act of 2008.

(89) As a direct and proximate result of Defendant's actions, Rodenberg has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

(90) At all times material hereto, Defendant engaged in retaliatory practices with malice or reckless indifference to Rodenberg's federally protected rights to support an award of punitive damages.

(91) As a result of Virginia Techniques' discrimination against her in violation of the ADA, Rodenberg is entitled to compensatory and punitive damages, front pay, back pay, attorneys fees and costs.

## COUNT III: Retaliation in violation of ADA

(92) Plaintiff incorporates the above paragraphs as if restated here.

(93) At all times relevant to this Complaint, Rodenberg was a qualified individual with a disability pursuant to the ADA. Rodenberg did suffer from a debilitating cervical spine bone spur condition that had to be surgically corrected and caused her to miss several months of work from April 2019 to September 2019. This condition substantially impacted Rodenberg in the major life activity of working for several months, until it was treated surgically. Rodenberg also developed PTSD which limited her major life activity of brain function in that it caused her to have anxiety and panic attacks. Rodenberg possessed the training, skills, and knowledge to perform the duties of a gymnastics coach. Prior to Virginia Techniques forcing Rodenberg out on an unpaid leave and terminating her employment, Rodenberg adequately performed the duties of a gymnastics coach and met or exceeded Virginia Techniques' legitimate expectations.

(94) Alternatively, Rodenberg qualifies as an individual with a disability under the ADA, because Virginia Techniques regarded Rodenberg as being impaired. 42 U.S.C. § 12102(3)(A).

(95) Prior to the termination of her employment and/or constructive discharge, Rodenberg performed the essential functions of her job as a gymnastics coach without accommodation.

(96) In January of 2020, Rodenberg, by counsel, contacted Virginia Techniques to report complaints of disability-related discrimination and notified Virginia Techniques that she planned to file a charge of discrimination. In April of 2020, Rodenberg filed an EEOC charge. This report of discrimination and the filing of the EEOC charge constitute protected activities.

(97) After Rodenberg engaged in these protected activities, Virginia Techniques was approached by a potential employer with which Rodenberg had applied. At a minimum, Virginia Techniques unjustifiably advised the potential employer that Rodenberg was not eligible for rehire and stated she could not comment further due to an ongoing legal dispute. The only reason, albeit irrational, Virginia Techniques had for classifying Rodenberg as "ineligible for rehire" was its own illegal, disability-related discriminatory animus. Moreover, Virginia Techniques' reference to an ongoing legal dispute was unnecessary and designed to taint Rodenberg's reputation as an employee to the potential employer. Indeed, Rodenberg's colleagues in the local gymnastics community thereafter communicated to Rodenberg that they believed that Johnson had influenced the potential employer to not hire Rodenberg.

(98) Virginia Techniques' statements to the potential employer constituted an adverse action because a former employer providing an unjustified and negative reference to a potential employer including gratuitous comments about an ongoing legal dispute with the employee, might well dissuade a reasonable employee from reporting disability-related discrimination or filing an EEOC charge regarding disability-related discrimination.

(99) Virginia Techniques' adverse act is causally-related to Rodenberg's protected activities. Virginia Techniques specifically noted the "ongoing legal dispute" when providing the unjustified negative reference. Rodenberg had no other "legal dispute" with Virginia Techniques aside from her reports of discrimination and her EEOC charge.

(100) Virginia Techniques had no legitimate non-discriminatory reason for its adverse act. Virginia Techniques classified Rodenberg as ineligible for hire because Rodenberg is an individual with a disability or Virginia Techniques regarded her as impaired. Rodenberg had no record of discipline, and her evaluation was positive. Just days prior to forcing Rodenberg out on leave and thusly terminating her employment, Virginia Techniques complimented Rodenberg on her coaching performance.

(101) The above-described acts by Virginia Techniques constitute retaliation in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. § 12101 *et seq.*, and ADA Amendments Act of 2008.

(102) As a direct and proximate result of Defendant's actions, Rodenberg has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

(103) At all times material hereto, Defendant engaged in retaliatory practices with malice or reckless indifference to Rodenberg's federally protected rights to support an award of punitive damages.

(104) As a result of Virginia Techniques' discrimination against her in violation of the ADA, Rodenberg is entitled to compensatory and punitive damages, front pay, back pay, attorneys fees and costs.

WHEREFORE, Plaintiff Wendy Irene Rodenberg prays for judgment against Virginia Techniques Gymnastics, Inc., and for injunctive relief, equitable relief, compensatory and punitive damages, in amounts to be determined at trial, together with prejudgment interest from the date of Rodenberg's separation from employment, post judgment interest, and for costs and attorney fees, and for such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED.

Respectfully Submitted,

WENDY IRENE RODENBERG

/s/ Monica L. Mroz
Monica L. Mroz (VSB # 65766)
Strelka Employment Law

Thomas E. Strelka, Esq. (VSB# 75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
N. Winston West, IV, Esq. (VSB # 92598)
Brittany M. Haddox, Esq. (VSB # 86416)
Monica Mroz, Esq. (VSB #65766)
STRELKA EMPLOYMENT LAW
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA 24011
Tel:  540-283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com
winston@strelkalaw.com
brittany@strelkalaw.com
monica@strelkalaw.com

*Counsel for Plaintiff*